UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEXTER ANDERSON,

        Petitioner,

v.                                                                                 Case No. 07-C-761

UNITED STATES OF AMERICA,

        Respondent.

**ORDER**

On August 23, 2007, Dexter Anderson filed this petition pursuant to 28 U.S.C. § 2255, and in a screening order I allowed him to proceed on his claim that his conviction was unconstitutional because he received ineffective assistance of counsel. He also raised a claim based on a challenge he is currently bringing to a prior conviction in Texas. That claim has been stayed pending the outcome of those proceedings. The government has now responded to the ineffective assistance claim and, for the reasons set forth below, I conclude that Anderson is not entitled to relief.

In 2004 Anderson pleaded not guilty and was convicted by a jury on several charges, including conspiracy to distribute more than 50 grams of crack cocaine. Anderson was represented by a number of different attorneys throughout his criminal proceedings. The principal argument underlying Anderson's ineffective assistance claim is his assertion that none of his attorneys made him aware of the implications of pleading guilty. He states, remarkably, that he believed he faced a similar sentence regardless of whether he pled guilty or proceeded to trial, and his ignorance on that point was due to his lawyers never communicating with him. Had he known that he was facing such a stiff sentence – the minimum sentence was twenty years – he surely would have pled guilty instead of risking a trial.

I first note that Anderson's claim of ignorance is incredible on its face. Anderson has been through the criminal justice system before and has served time for a previous felony. It is simply not plausible that he was unaware that going to trial carried the risk that he would receive a longer sentence. If that were true, criminal defendants would *always* take their chances in court because there would be nothing to lose – yet it is well-known that more than 90 percent of such defendants choose to plead guilty. Since Anderson must have known that there would be substantial consequences if he went to trial and was found guilty, I reject his claim that he would have taken a plea offer had any of his attorneys discussed those consequences with him.

In addition, it is clear that Anderson was apprised of the *specific* consequences of going to trial. Anderson received a letter from his attorney in December 2003, along with the government's December 18, 2003 plea offer itself. (Respondent Ex. 1.) In the letter, Atty. Steven Kohn advised Anderson that he should read the government's letter explaining its plea offer and stated that Anderson should call Kohn collect to discuss it. The offer letter from the government was included. That letter clearly sets forth the government's position that if Anderson went to trial, the government would file a Section 851 information, which would boost the minimum sentence to 20 years. It also discusses a possible guideline range of 292-365 months. The letter further explains that a plea deal would result in a likely range of only 168-210 months.

Anderson admits he read the letter from his attorney as well as the government's plea offer letter. Another attorney, Ann Bowe, states that she discussed the deal with Anderson and that he was familiar with its terms. (Ex. 3 at ¶ 4.) Anderson's attempt to get around the fact that he received and read this crucial information is unpersuasive. He states that although he had read the December 18 letter from the government in December, he lost it two months later because the U.S. Marshals would not allow him to keep it with him when he transferred between court and his cell.

2

He argues that "[s]ince Anderson's attorneys did not explain the terms [of the proposed plea agreement] and because Anderson no longer retained a copy of the terms, Anderson attempted to calculate the guideline range on his own." (Reply Br. at 5.) Even if true, however, that does not have anything to do with Anderson's ineffective assistance of counsel claim – he cannot dispute that his attorney provided him with the key information that he now alleges was lacking. Apparently he never asked about it again or mentioned any desire to consider a plea. Even if Anderson later forgot about the terms contained in the letter his attorney sent him (which is not a credible proposition), that does not mean his attorneys were under a continuing obligation to discuss terms of a possible plea deal.

Anderson also argues that his trial attorney, Ann Bowe, was ineffective because she allowed him to go to trial when the case against him was essentially insurmountable. He states that she told him he had a 50% chance of winning when in reality (albeit in retrospect) that was not true. Bowe has vigorously disputed this assertion, noting that as a matter of practice she does not give her clients specific percentages of success.[1] (United States Ex. 3.) Even if she did, however, such an estimate is not so far out of bounds that it constitutes ineffective assistance. First, I note that telling a client he has a fifty percent chance of success is the same as telling him there is a strong chance of conviction. An estimate so hedged is not overly sanguine or recklessly optimistic such that it would be likely to convince an otherwise cautious defendant to roll the dice and go to trial.

More importantly, counsel enjoys a strong presumption that she performed effectively, *United States v. Fudge,* 325 F.3d 910, 923 (7th Cir. 2003), and several reasons suggest that it is not

---

[1] The very fact that he had this conversation with Bowe undermines his claim that he was unaware of the fact that he might receive a tougher sentence if he went to trial. That is, if there were no downside risk to a trial – as he allegedly thought – then why would he even be weighing his chance of success? Even a one percent chance of success would justify a trial.

3

for this court to second-guess an attorney's estimation of a case's merit unless her assessment was wholly unreasonable. First, the very nature of litigation involves *disagreements* about the strength of a given case. That is, most cases that actually go to trial evidence the fact that two or more lawyers have different opinions as to the merits of their respective cases. Given the wide array of reasonable estimations, it cannot be ineffective assistance unless counsel all but guaranteed success or was so far off (for example, in a sentencing prediction) that delinquence may be inferred. *United States v. Martinez,* 169 F.3d 1049, 1053 (7th Cir. 1999) (noting that even some grossly uninformed predictions do not rise to the level of ineffective assistance).

A second reason undercutting Anderson's claim is that it is difficult meaningfully to assess arguments about an attorney's predictions through the lens of hindsight. In advance of a trial, an attorney's prediction is like that of a doctor who has yet to perform exploratory surgery or clinical tests. He can calculate the worst and best case scenarios and give a rough opinion of what might happen based on experience and training, but unless the evidence is glaringly damning he cannot be called ineffective merely because his prediction does not pan out. "The attorney need not be 100% correct in her prediction of the consequences of pleading guilty and of going to trial, as a mistake, in and of itself is not proof of deficient performance." *Julian v. Bartley,* 495 F.3d 487, 495 (7th Cir. 2007). Here the case was based largely on witness testimony, and when the attorney has not yet seen the trial unfold and the witnesses testify, it is all but impossible to claim that her pretrial prediction was deficient performance.[2] In fact, such a result is exactly the risk that a criminal

---

[2] I note further that Anderson does not allege that Bowe's prediction was based on any failure to investigate his case or misreading of any law. When a prediction is based on legal error, it may render counsel's performance deficient, *Moore v. Bryant,* 348 F.3d 248 (7th Cir. 2003), but that is not the case here.

4

defendant takes when going to trial. Accordingly, as I find no evidence supporting Anderson's ineffective assistance claim, the claim will be dismissed.

That leaves the matter of Anderson's stayed claim, which is based on his challenge to a prior conviction in Texas state court. He has not informed the court of any change in the status of his Texas case, and so the claim will remain stayed. The stay will not be indefinite, however. Anderson is to file an update report with this court as soon as he receives a ruling in his Texas case or by June 1, 2008, whichever comes first.

There is also the possibility that Anderson may be entitled to reconsideration of his sentence in light of the recent amendments to the provisions of the Guidelines reducing the base level for offences involving crack cocaine. Although the changes are to be applied retroactively, they do not become effective until March. In the event it appears Anderson may qualify for a sentence reduction in light of those changes, the court will consider an amendment of his petition adding such a claim. Counsel may be appointed to assist Anderson in pursuing such relief, but any such request is premature at this time.

Accordingly, Anderson's motion to vacate the judgment based on ineffective assistance is **DENIED**; the remaining claim is **STAYED**. The clerk is directed to administratively close this case.

**SO ORDERED** this     29th     day of January, 2008.

      s/ William C. Griesbach
      William C. Griesbach
      United States District Judge

5

Case 1:07-cv-00761-WCG    Filed 01/30/08    Page 5 of 5    Document 12